UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAMELA BROWN,

     Plaintiff,

v.                                          Case No: 8:16-cv-897-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## ORDER

Plaintiff, Pamela Brown, seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.    Procedural Background

Plaintiff filed an application for a period of disability on December 4, 2012. (Tr. 81, 198–199.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 25, 81, 89.) Plaintiff then requested an administrative hearing. (Tr. 93.) On August 1, 2014, a hearing was held before ALJ Patrick Cutter. (Tr. 73–80.) During the hearing, Plaintiff requested and was granted a continuance in order to retain counsel. (Tr. 76–79.) A second hearing was held before ALJ Elving Torres on July 23, 2015, at which Plaintiff appeared and testified without counsel. (Tr. 40–73.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 25–31.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council

denied.  (Tr. 1–3.)  Plaintiff then timely filed a complaint with this Court.  (Dkt. 1)  The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1957, claimed disability beginning on February 28, 2012.  (Tr. 198.)  Plaintiff has a high school education.  (Tr. 225.)  Plaintiff's past relevant work experience included work as a restaurant manager and landscape designer.  (Tr. 29, 225.)  Plaintiff alleged disability due to brain trauma and a stroke.  (Tr. 224.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity from February 28, 2012, through her date last insured, March 31, 2012.  (Tr. 27.)  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: status post cerebral vascular accident, episodic headaches, and elevated blood pressure.  (Tr. 27.)   Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 28.)  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with additional restrictions.  (Tr. 28.)  Specifically, the ALJ concluded that Plaintiff can only occasionally climb, balance, stoop, kneel, crouch, and crawl.  The ALJ further found that Plaintiff cannot climb ladders, ropes, or scaffolds, and she must avoid unprotected heights, extreme industrial vibrations, extreme loud noise, and cannot operate dangerous machinery. (Tr. 28.)  In addition, Plaintiff can only frequently engage in fine manipulation with her dominant right upper extremity.  (Tr. 28.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms

alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 29.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work. (Tr. 29–30.) Further, given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a waitress and a sales person of nursery products. (Tr. 31.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 31.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-

related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the

correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to fully and adequately develop the record; and (2) the ALJ failed to accurately determine Plaintiff's severe impairments and their impact on her ability to perform substantial gainful activity.  For the reasons that follow, neither of these contentions warrant reversal.

### A.    The ALJ's Development of the Record

Plaintiff first contends that the ALJ failed to adequately insure that Plaintiff was knowingly and willingly proceeding without representation.  (Dkt. 11 at 6.)  Specifically, Plaintiff argues that neither ALJ advised her that a second continuance was available to her if she could show good cause pursuant to the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-6-52 § C1.  Plaintiff further argues that the ALJ at the first hearing failed to obtain an "Acknowledgment of Postponement in Order to Obtain Representative" as set forth in HALLEX.  Plaintiff also contends that the ALJ at the second hearing failed to fulfill the duty due to an unrepresented claimant and failed to inquire whether Plaintiff desired a second continuance.  (Dkt. 11 at 6.)  Without further explanation, Plaintiff states that she was harmed by her lack of counsel as "important aspects of the claim were not raised."  (Dkt. 11 at 6.)

Pursuant to 42 U.S.C. § 406, the Commissioner of Social Security is required to "notify each claimant in writing . . . of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security.  Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge." 42 U.S.C. § 406(c).  The Eleventh Circuit has recognized

that "[a] Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Where a claimant has not been adequately informed of her statutory right, however, her waiver is not "knowingly and intelligently" made. *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982). "The deprivation of the statutory right to counsel at a Social Security hearing is a statutory wrong, not a constitutional wrong." *Graham*, 129 F.3d at 1422.

Further, "there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." *Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir. 1995); *Kelley v. Heckler*, 761 F.2d 1538, 1540 n.2 (11th Cir. 1985) (explaining that regardless of whether a claimant waived her right to counsel, the claimant must show prejudice to obtain a remand). Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). This standard does not require the court "to determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ." *Id.* at 935 (citation omitted). The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or "clear prejudice." *See Brown*, 44 F.3d at 934–35. Prejudice "at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley*, 761 F.2d at 1540. Nevertheless, the plaintiff bears the burden of proving that he or she is disabled and is responsible for producing evidence to support his or her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a), (c)).

- 6 -

Here, in the Commissioner's notice denying Plaintiff's claim at the initial level, the notice states that Plaintiff "can have a friend, lawyer, or someone else help you.  There are groups that can help you find a lawyer or give you free legal services if you qualify.  There are also lawyers who do not charge unless you win your appeal."  (Tr. 92.)  The notice also states that the Social Security office has a list of groups to help with an appeal.  (Tr. 92.)  Further, in her request for hearing before the ALJ, Plaintiff affirmed that she understood that she has a right to be represented and if she needed representation, the Social Security office could give her a list of legal organizations to assist her in locating a representative.  (Tr. 93–94.)  Plaintiff was again informed of her right to representation in writing in a letter from the Commissioner explaining the hearing process.  (Tr. 95–97.)  The record further reflects that Plaintiff was in fact represented by counsel in June 2013, who then withdrew in January 2014.  (Tr. 104, 116.)  At the August 2014 hearing, the ALJ expressly informed Plaintiff that she had the right to representation and that the hearing could be continued in order for her to retain counsel.  (Tr. 76.)  The ALJ then granted Plaintiff a "one-time continuance" for her to find representation.  (Tr. 76.)

At Plaintiff's second hearing, she was again informed of her right to representation and of the information in the notice of hearing sent to her stating the same.  (Tr. 42.)  Plaintiff confirmed that she was informed of this right and had retained counsel twice, but that both counsel withdrew their representation.  (Tr. 42.)  Plaintiff relies on HALLEX for the proposition that the ALJ was required to inform Plaintiff that a second continuance might have been available if she showed good cause.  (Dkt. 11 at 6.)  However, Plaintiff does not claim that she was still engaged in the process of trying to obtain representation, nor did she request a second continuance at the hearing. (Dkt. 11 at 6.)  Moreover, the Eleventh Circuit has declined to find that HALLEX carries the force of law.  *McCabe v. Comm'r of Soc. Sec.*, 661 Fed. App'x 596, 519–600 (11th Cir. 2016).  An

agency's violation of its own governing rules must result in prejudice before the court will remand to the agency for compliance. *Carroll v. Social Sec. Admin., Comm'r*, 453 Fed. App'x 889, 892 (11th Cir. 2011). Even if HALLEX carried the force of law and the ALJ failed to comply with it, Plaintiff has not shown that she was prejudiced by this failure. *Id*.

Plaintiff makes the broad statement that she was harmed by her lack of counsel as "important aspects of the claim were not raised." (Dkt. 11 at 6.) Plaintiff also contends that the ALJ failed to question Plaintiff to illicit important information and create a full and fair record. (Dkt. 11 at 7.) Specifically, Plaintiff argues that the ALJ should have questioned Plaintiff further regarding the work she did after her alleged onset date, even though the ALJ found that this work activity did not rise to substantial gainful activity. (Dkt. 11 at 7.) Plaintiff states that "[t]o understand the Plaintiff's ability to engage in substantial gainful activity in the twelve months following the alleged onset date, it would clearly have been of interest to know what [the] conditions of the work activity in which she did engage." (Dkt. 11 at 7.) However, the ALJ did inquire into the type of work Plaintiff was able to perform during this time period. (Tr. 50–53.) Further, the ALJ addressed Plaintiff's return to work in her decision, noting that at that time, Plaintiff "told her doctor that she had returned to almost normal, except for some mild problems with weakness in her right hand." (Tr. 29, 287.) Plaintiff argues that there was no inquiry into the number of hours Plaintiff worked or whether she was able to work without help, accommodations, or supervision. (Dkt. 11 at 7–8.) However, this statement alone does not establish the required prejudice for remand. Plaintiff fails to demonstrate how the ALJ's lack of questioning into these specifics of Plaintiff's work after her alleged onset date resulted in prejudice or unfairness to Plaintiff.

Plaintiff also argues that the ALJ failed to develop the record regarding Plaintiff's caretaker. (Dkt. 11 at 8.) At the hearing, Plaintiff testified that she had a caretaker at home through May 2013. (Tr. 47.) Plaintiff further testified that she "had a BNA [phonetic] come in…." (Tr. 47.) Without further explanation, Plaintiff argues that it would have been significant to know what a "BNA" is and to ascertain if there were records outstanding regarding the caretaker and BNA. (Dkt. 11 at 8.) Plaintiff then states that "if the testimony is accurate, the Plaintiff was under significant care for a period exceeding twelve months, beginning prior to the date last insured." (Dkt. 11 at 8.) However, the ALJ questioned Plaintiff regarding what she was physically capable of doing during this time period, including her ability to walk and climb. (Tr. 46–47.) Further, the Court notes that Plaintiff does not make the argument that there are records of the caretaker and BNA's treatment of Plaintiff. Plaintiff fails to identify any specific evidence, such as a specific impairment or resulting limitations, from such records that should have been considered by the ALJ or whose absence caused any prejudice. Plaintiff's argument is speculative, and Plaintiff again fails to demonstrate how the ALJ's questioning resulted in prejudice or unfairness. *See Kelley*, 761 F.2d at 1540–41.

Plaintiff next argues that she was not given the opportunity to examine all the evidence in the record. Plaintiff contends that while the ALJ did ask Plaintiff if she had any records relating to the relevant period, Plaintiff did not answer whether she was aware of any outstanding records. (Dkt. 11 at 7.) Plaintiff also argues that she was not given an opportunity to object at the end of the hearing when Plaintiff mentioned that she had seen the disc file. (Dkt. 11 at 7.) A review of the hearing transcript reveals that the ALJ asked Plaintiff whether she had any medical records that relate to the period of time during her disability. (Tr. 44.) Further, at the end of the hearing, the ALJ asked Plaintiff whether she had any questions or whether there was anything that had not

been addressed.  (Tr. 69.)   Plaintiff responded that she reviewed the disc of evidence and commented on one of her physician's notes.  (Tr. 69.)  The ALJ and Plaintiff then had a brief discussion regarding the Plaintiff's treating physicians, confirming that the ALJ had records from her treatment at Hershey Medical Center.  (Tr. 69–72.)  Thus, Plaintiff had an opportunity to review the evidence.  Further, Plaintiff does not specify what evidence she would have objected to had she had the opportunity, nor how such an objection would have affected the ALJ's decision.  Thus, Plaintiff again fails to show prejudice or unfairness, and Plaintiff's contention does not warrant remand.

### B. The ALJ's Analysis of Plaintiff's Impairments

Plaintiff next contends that the ALJ failed to accurately determine Plaintiff's severe impairments and their impact on her ability to perform substantial gainful activity.  Plaintiff also makes several arguments regarding the ALJ's analysis of Plaintiff's impairments and of the record evidence.

### 1. The ALJ's Assessment of Plaintiff's Severe Impairments

In her decision, the ALJ concluded that Plaintiff has severe impairments of episodic headaches, status post cerebral vascular accident, and elevated blood pressure.  (Tr. 27.)  Plaintiff argues that the ALJ failed to find that Plaintiff has "severe mental, neurological, or cognitive problems."  (Dkt. 11 at 11.)

At step two of the evaluation process, the ALJ must consider the medical severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, significantly limit the claimant's physical or mental ability to do basic work skills. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(c)).  In

this step of the sequential process, the claimant bears the burden of proof that he or she suffers from a severe impairment or combination of impairments.  *Gibbs v. Barnhart*, 156 Fed. App'x 243, 246 (11th Cir. 2005).  An impairment is not severe "only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  "Basic work activities" include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b)(1)–(6).

If an ALJ errs in finding that a claimant's *additional* impairments are non-severe, such error is harmless when the ALJ finds that a claimant has a severe impairment.  *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. App'x 823, 824–25 (11th Cir. 2010).  This is because the ALJ has determined that step two of the analysis is met and proceeds in the disability analysis.  *Id.* ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [claimant] had a severe impairment," which is all that is required at step two of the sequential analysis); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 Fed. App'x 949, 951 (11th Cir. 2014) ("Accordingly, even assuming that [claimant] is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."); *Burgin v. Comm'r of Soc. Sec.*, 420 Fed. App'x 901, 902–03 (11th Cir. 2011) ("Even assuming the ALJ erred when he concluded [claimant's] edema, sleep apnea, and obesity were not severe

- 11 -

impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process."); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is enough to satisfy step two).

The ALJ is, however, "required to consider all impairments, regardless of severity, in conjunction with one another in performing the *latter steps* of the sequential evaluation." *Tuggerson-Brown*, 572 Fed. App'x at 951 (emphasis added).  The ALJ's failure to consider the combination of a claimant's impairments requires reversal.  *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985).   As examples, an ALJ's statements that she considered whether claimant's impairment or combination of impairments met a Listing or that she considered all symptoms in determining claimant's RFC are sufficient "to demonstrate that the ALJ considered all necessary evidence."  *Tuggerson-Brown*, 572 Fed. App'x at 951 (finding the ALJ's discussion of the combined effects of claimant's impairments sufficient because the ALJ discussed the non-severe impairments in the ALJ's assessment of claimant's RFC); *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (emphasis in original) (quoting the ALJ and finding that it was "clear" that the ALJ considered claimant's impairments in combination because the ALJ stated that "'based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity'").

In this case, at step two of the sequential evaluation process, the ALJ found that Plaintiff had severe impairments of episodic headaches, status post cerebral vascular accident, and elevated blood pressure.  (Tr. 27.)  Thus, the ALJ found in Plaintiff's favor at step two and proceeded to

the next steps of the sequential evaluation process to determine whether Plaintiff was disabled. Because the ALJ found that Plaintiff had severe impairments and thus proceeded beyond step two, any error in failing to find that Plaintiff suffers from the *additional* severe impairments was harmless.  *Packer v. Comm'r, Soc. Sec. Admin.*, 542 Fed. App'x 890, 892 (11th Cir. 2013).

Further, the ALJ's findings at steps three of the sequential process demonstrate that the ALJ considered all of Plaintiff's impairments in combination.  At step three of the sequential process, the ALJ properly considered all of Plaintiff's relevant impairments and found that Plaintiff did not have an "impairment or combination of impairments" that met or equaled a Listing (Tr. 28), which is sufficient to show that the ALJ considered the combined effect of Plaintiff's impairments.  *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991); *Hutchinson v. Astrue*, 408 Fed. App'x 324, 327 (11th Cir. 2011).

In sum, the ALJ sufficiently considered whether the combination of Plaintiff's impairments rendered Plaintiff disabled because the ALJ considered all of Plaintiff's impairments, severe and non-severe, at step three of her analysis.  Further, because the ALJ, at step two of her analysis, found that Plaintiff has severe impairments, the ALJ's determination that Plaintiff's mental, neurological, or cognitive problems are non-severe, even if erroneous, was harmless.  Accordingly, Plaintiff's contention does not warrant reversal.

### 2.    *The ALJ's RFC Assessment and Hypotheticals to the VE*

Plaintiff also contends that the ALJ's RFC assessment is erroneous because it fails to include non-exertional limitations.  Plaintiff argues that the severe impairments the ALJ found at step two of the sequential evaluation are not reflected in Plaintiff's RFC, nor in the ALJ's hypothetical questions to the VE.  (Dkt. 11 at 9.)  Specifically, Plaintiff argues the ALJ failed to evaluate and provide limitations for Plaintiff's episodic headaches and high blood pressure.  (Dkt.

11 at 9.)    Therefore, Plaintiff argues, the VE's testimony did not constitute substantial evidence. (Dkt. 11 at 15.)

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The RFC is defined as the most a claimant "can still do despite [his or her] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms.  20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3).  Therefore, the ALJ's RFC assessment need not be identical to a particular assessment of record or incorporate precise limitations set forth by a physician.  *See* 20 C.F.R. § 416.945(a)(3) (stating that all of the record evidence is considered in the RFC assessment).  Further, while the ALJ should consider medical opinions regarding a claimant's ability to work in forming the RFC, the medical opinions are distinct from the RFC assessment.  *Id.* §§ 404.1513(b), (c), 404.1527, 404.1545, 416.913(b), (c), 416.927, 416.945.  Specifically, a claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive.  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC because the ALJ failed to include limitations for Plaintiff's headaches and high blood pressure.  (Dkt. 11 at 9.)  In assessing Plaintiff's RFC, the ALJ noted that Plaintiff suffered a cerebral vascular accident in February 2012.  (Tr. 29.)  However, ALJ further noted that the effects of the accident "were relatively short-lived."  (Tr. 29.)  For example, in March 2012, Plaintiff's physician indicated that she was making neurological improvements.  (Tr. 29.)  Plaintiff was awake, alert, oriented to person, place, month,

- 14 -

and year.  (Tr. 290.)  Plaintiff was able to walk to the bathroom and perform basic activities of

daily living.  (Tr. 289.)  A review of a March 27, 2012, CT scan of Plaintiff's head revealed

resolution of the hemorrhage associated with her February 2012 accident.  (Tr. 289–290.)

Although her blood pressure was noted as high, Plaintiff was not given any limitations related to

her blood pressure.  (Tr. 290.)  In April 2012, Plaintiff was again oriented to time, place, person,

had normal recent and remote memory, and showed good judgment, although she showed

confusion.  (Tr. 485.)  Plaintiff exhibited a normal gait and station, normal muscle tone, and normal

movement of all of her extremities.  (Tr. 485.)  By May 2012, Plaintiff appeared well and showed

slightly slower fine motor skills with her right hand and slightly worse coordination with her right

upper extremity.  (Tr. 287.)  As the ALJ noted, Plaintiff reported that she had returned to work and

that she felt she had returned to almost normal but for some mild problems with weakness and

coordination in her right hand.  (Tr. 29, 287.)  The record also reveals that Plaintiff underwent

several examinations between April and November 2012 wherein she denied headaches and her

physical examinations were generally within normal limits.  (Tr. 449, 455, 458, 461, 464, 470,

473, 485.)  Further, the state's medical expert, Dr. Jerry Brenner, opined that Plaintiff could

perform work at the light exertional level with some additional postural limitations.  (Tr. 29, 86–

87.)  The ALJ afforded this opinion considerable weight and noted that Plaintiff's limitations

within the RFC were more restrictive.  (Tr. 29.)  Therefore, in light of Plaintiff's medical records

and the state agency's opinion, the ALJ's RFC determination is supported by substantial evidence.

Moreover, Plaintiff has not identified any work-related limitations related to her high blood

pressure or headaches.  Plaintiff bears the burden of showing that she has a severe impairment or

combination of impairments that may qualify as a disability.  *Hutchinson*, 408 Fed. App'x. at 326

(citing *McDaniel*, 800 F.2d at 1031).  "[T]he 'severity' of a medically ascertained disability must

be measured in terms of its effect upon ability to work, not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Proof of the mere existence of an impairment does not prove the extent to which the impairment may limit Plaintiff's ability to work. *Hutchinson*, 408 Fed. App'x. at 326. Here, Plaintiff points to no medical evidence indicating that Plaintiff's high blood pressure or headaches affected her ability to work.

Additionally, to the extent that Plaintiff points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of the court's appellate review, which precludes us from "re-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner]…even if the evidence preponderates against" the decision. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (quoting *Bloodsworth,* 703 F.2d at 1239). This court may not reweigh the evidence and decide facts anew and must defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Plaintiff further argues that the VE's testimony does not constitute substantial evidence because the ALJ failed to include Plaintiff's headaches and high blood pressure in her hypothetical questions. (Dkt. 11 at 10.) When the ALJ determines that a claimant cannot perform past relevant work, then the Commissioner must produce evidence that claimant is able to do other jobs existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). The burden then shifts to the claimant to show that the claimant "is unable to perform the jobs that the Commissioner lists." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "[T]he Commissioner's preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a [vocational expert]." *Jones v.*

*Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).   A vocational expert's testimony constitutes substantial evidence when the ALJ poses a hypothetical question to the vocational expert "which comprises all of the claimant's impairments."  *Wilson*, 284 F.3d at 1227.

Here, upon questioning the VE regarding whether there are jobs existing in significant numbers in the national economy for Plaintiff, the ALJ posed a series of questions with limitations consistent with the RFC finding.  (Tr. 65, 70.)  The VE testified that an individual with Plaintiff's RFC could perform work such as a waitress and a salesperson in a nursery.  (Tr. 67, 70.)  As addressed above, the ALJ's RFC finding is supported by substantial evidence.  Further, "the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."  *Crawford v. Comm'r Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).  Thus, because the ALJ's hypothetical questions included all of Plaintiff's impairments addressed in the RFC finding, the VE's testimony constitutes substantial evidence.  *See Freeman v. Comm'r, Soc. Sec. Admin.*, 593 Fed. App'x 911, 916 (11th Cir. 2014) (affirming the ALJ's decision because the hypotheticals posed by the ALJ were consistent with the RFC determination and adequately considered all of claimant's credible limitations).

### 3.     *Records from Dr. Gurwitz*

Plaintiff next contends that the ALJ failed to consider the opinions of Dr. Linda Gurwitz. (Dkt. 11 at 13.)  Specifically, Plaintiff contends that the ALJ failed to consider Dr. Guriwtz's July 21, 2014, mental RFC questionnaire and medical source statement regarding Plaintiff's impairments. (Tr. 659–665.)  Within the RFC questionnaire, Dr. Gurwitz completed an assessment concerning Plaintiff's limitations.  (Tr. 659–662.)  For example, Dr. Gurwitz opined that Plaintiff has moderate limitations in her ability to remember locations and work-like procedures and extreme limitations in her ability to remember and understand detailed instructions.  (Tr. 660.)  In

the medical source statement, Dr. Gurwitz concluded that Plaintiff has no limitations in her ability to carry out simple instructions or make judgments on simple work-related decisions, mild limitations in her ability to understand and remember simple instructions, and extreme limitations in her ability to carry out, make judgments on, and understand and remember complex instructions. (Tr. 663.)  Dr. Gurwitz further found that Plaintiff has no limitations in her ability to interact with the public, mild limitations in her ability to interact appropriately with co-workers, and marked limitations in her ability to interact with her supervisors and respond to changes in routine work settings.  (Tr. 663.)

Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity" of the claimant's impairments, including the claimant's symptoms, diagnosis and prognosis, the claimant's ability to perform despite impairments, and the claimant's physical or mental restrictions.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (internal quotation and citation omitted); 20 C.F.R. § 404.1527(a)(2).

A treating physician's opinion is "given substantial or considerable weight unless good cause is shown to the contrary" and an ALJ must specify the weight given to the treating physician's opinion.  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  However, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his or her decision, so long as the decision is not "a broad rejection" that leaves the court with insufficient information to determine whether the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1211.

Thus, "[t]o the extent that the administrative law judge erred by failing to state with particularity the weight assigned to [treating physicians'] medical opinions, the error is harmless"

if it does not "affect the administrative law judge's ultimate determination."  *Hunter v. Comm'r of Soc. Sec.*, 609 Fed. App'x 555, 558 (11th Cir. 2015) (finding that the ALJ's decision was supported by substantial evidence and, therefore, the ALJ's failure to explicitly state the weight afforded to treating physicians' testimony was harmless error); *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 Fed. App'x 975, 975–76 (11th Cir. 2014) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion and concluding that "when the ALJ's error did not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand"); *Caldwell v. Barnhart*, 261 Fed. App'x 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to state the weight given to a physician's opinions was harmless error because the opinions did not otherwise contradict the ALJ's findings); *Wright v. Barnhart*, 153 Fed. App'x 678, 684 (11th Cir. 2005) (finding harmless error for the ALJ's failure to explicitly state what weight he afforded to a number of physicians' medical opinions when the opinions did not directly contradict the ALJ's findings).

Here, the Court notes that Dr. Gurwitz's opinions are dated after Plaintiff's date last insured.  (Tr. 220, 662, 665.)  As the ALJ stated, the relevant time period for the ALJ's decision was between Plaintiff's alleged onset date, February 28, 2012, and the date last insured, March 31, 2012.  (Tr. 29.)  Dr. Gurwitz's opinions at issue are dated July 21, 2014, and her treatment of Plaintiff began in May 2014.  Therefore, Dr. Gurwitz's opinions and treatment of Plaintiff occurred over two years outside the time period at issue and "were not particularly relevant to whether [Plaintiff] was disabled for purposes of [disability insurance benefits]."  *Hughes v. Comm'r Soc. Sec. Admin.*, 486 Fed. App'x 11, 14 (11th Cir. 2012); *Mason v. Comm'r Soc. Sec.*, 430 Fed. App'x 830, 832–33 (11th Cir. 2011).

Further, the Commissioner argues that the ALJ was not required to weigh Dr. Gurwitz's opinions because they are not medical opinions, but rather findings reserved to the Commissioner.

The Court agrees.  Under 20 C.F.R. § 404.1527(d), opinions addressing whether a claimant is disabled, whether a claimant's impairments meets or equals an impairment in the Listings, a claimant's RFC, and the application of vocational factors are reserved for the Commissioner. Opinions on these issues are not medical opinions.  20 C.F.R. § 404.1527(d).  Rather, they are administrative findings that are dispositive of a case.  *Id.*  Opinions on issues reserved to the Commissioner are not given any special significance.  *Id.*  Further, 20 C.F.R. § 404.1527(d)(1) explicitly states that "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled."  Therefore, Dr. Gurwitz's opinions regarding Plaintiff's ability to carry out work functions are not a medical opinions, but administrative findings reserved to the Commissioner.  *Hutchinson*, 408 Fed. App'x at 328 ("Additionally, whether Hutchinson could hold a job is a vocational opinion, not a medical one. That question is reserved to the ALJ."); *Kelly v. Comm'r of Soc. Sec*., 401 Fed. App'x 403, 407 (11th Cir. 2010) (stating a doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is unable to work, is not considered a medical opinion and is not given any special significance, even if offered by a treating source); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) ("The opinion of the treating physician regarding disability or inability to work may be discounted if it is unsupported by objective medical evidence or is merely conclusory.").

Moreover, even assuming Dr. Gurwitz's opinions constitute medical opinions, the objective medical evidence discussed above does not support Dr. Gurwitz's July 21, 2014, opinions.  In contrast, the ALJ's decision was supported by substantial evidence.  For example, in May 2012, Plaintiff had returned to work and felt she had returned to almost normal.  (Tr. 29, 287.) Therefore, any error in failing to address Dr. Gurwitz's July 21, 2014, opinion was harmless.

*Hunter*, 609 Fed. App'x at 558 (finding that the ALJ's decision was supported by substantial evidence and, therefore, the ALJ's failure to explicitly state the weight afforded to treating physicians' testimony was harmless error).

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on June 20, 2017.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record